UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SCOTT J. DONOVAN,

                           Plaintiff,

                                                                         DECISION AND ORDER

                                                                          08-CV-6255L

                           v.

UNITED ASSOCIATION PLUMBERS &
STEAMFITTERS LOCAL NO. 22 PENSION FUND,

                           Defendant.
_____

      Plaintiff Scott Donovan ("Donovan") filed this action against United Association of Plumbers & Steamfitters Local No. 22 Pension Fund ("defendant" or the "Fund"), the Plan Administrator of the Local 22 Pension Plan (the "Local 22 Plan"), in which Donovan was a Participant. Donovan alleges that defendant wrongfully denied him disability retirement pension benefits, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1).

      Defendant now moves for summary judgment (Dkt. #12), arguing that Donovan cannot satisfy his burden to show that its decision to deny him disability retirement pension benefits from the Local 22 Plan was arbitrary and capricious. For the reasons that follow, that motion is granted.

**I.    Standard of Review**

      Where, as here, the terms of an ERISA Plan give its Administrator the sole and absolute authority to interpret the Plan and determine claimants' eligibility for benefits, the Administrator's determinations are subject to a deferential standard of review, which requires only that the Administrator's decision was not arbitrary or capricious. *See Pagan v. Nynex Pension Plan,* 52 F.3d

438, 441 (2d Cir. 1995); *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Darling v. DuPont deNemours & Co.,* 952 F.Supp. 162, 163 (W.D.N.Y. 1997). Under this standard, this Court may only overturn the final decision of the Administrator to deny benefits if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Darling*, 952 F.Supp. 162 at 165 (quoting *Pagan,* 52 F.3d 438 at 442). The reviewing court's ultimate focus is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Jordan v. Retirement Committee of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir. 1995). When a Plan Administrator makes a determination based upon evidence in the record before it, ERISA mandates only that the Plan procedures afford a reasonable opportunity for a full and fair review. *See* 29 U.S.C. § 1133(2).

Plaintiff argues that the defendant is not entitled to this standard of review because it allegedly operates as both the payer and administrator of benefits and is therefore locked in a conflict of interest. Defendant avers, and Donovan does not dispute, that the Fund is a not-for-profit, jointly administered trust, for which there exist no "profits," but rather savings which inure to the benefit of the Fund's beneficiaries and participants. Accordingly, I find that there is no conflict of interest posed by the Fund's dual roles as payer and administrator, and that its determinations are entitled to the more lenient standard of review. Moreover, even if this Court were to review the Fund's determination *de novo*, I would reach the same conclusion as that reached by the defendant: that plaintiff's uncorrected Break in Service deprived him of his status as a Plan Participant, years before he applied for disability retirement benefits, and that the plaintiff's application was therefore properly denied.

## II. Plaintiff's History as a Plan Participant

Plaintiff began his employment as a plumber with the United Association of Plumbers & Steamfitters, Local 129 in approximately 1976, and continued until he became disabled in or around

January 1989. At that point, Donovan applied for and was awarded disability retirement benefits from Local 129. Donovan's disability benefits continued to be paid until 1993, when his disability abated and he returned to work with Local 129, and continued there from 1993 through 1997.

Local 129 thereafter merged with two other local unions to form Local 22. In or around 1997, Donovan was temporarily transferred from Local 22 to perform work for Local 13. Pursuant to a reciprocity agreement between the Locals, Donovan continued to earn service credits toward his Local 129/Local 22 pension plan while working for Local 13. In or around 1998, Donovan ended his membership with Local 22 altogether and became a permanent member of Local 13, where he continued to work until he became disabled again in 2006. Donovan is presently receiving disability retirement benefits through Local 13.

On or about March 29, 2006, Donovan applied for disability retirement benefits through Local 22. The defendant denied that application, stating that Donovan was ineligible for disability retirement benefits under the Local 22 Plan, because, inter alia, he was, no longer a Participant in the Plan. This action followed.

The Court has considered the evidence of record. Based upon that evidence, I find that the defendant's determination is reasonable and supported by substantial evidence of record, and was neither arbitrary nor capricious.

**III. Plaintiff's Claims**

The Local 129 Plan provides that:

> A Participant who is receiving pension benefits under this Plan may become re-employed after retirement, provided that . . .
>
>> (b)   The participant may become so re-employed in the same industry, in the same trade or craft and in the same jurisdictional area of the Union, without any abatement or reduction of his pension benefits under this Plan, if:
>>
>>> (I)   the re-employment is with a contributing employer and if:

      (A)      the re-employment is for such work as covered by the Union's Bargaining Agreement and such contributing employer makes contributions to the UA Local 129 Pension Fund for such employment...

Dkt. #12-5 at Art. 4, Section 4.6(b)(1)(A).

It is undisputed that plaintiff's return to work for Local 129 (later Local 22) followed a disability retirement from Local 129. Plaintiff contends that his return constituted "re-employment" as defined by the Local 129 Plan, inasmuch as he returned to work in April 1993 and was credited with service hours by Local 22 for that work, from that time until he ceased work for Local 22 and became a permanent member of Local 13 in July 1998.

With respect to Donovan's status during his re-employment, the Local 129 Plan states that, "[d]uring any period of re-employment, whether the Participant's pension benefits under this plan continue without any abatement or reduction, or are suspended, the Participant shall continue to be classified as a Retired Participant under this Plan." (Dkt. #12-5, Art. 4, Section 4.6(e)). Pursuant to this provision, Donovan alleges that throughout the period of re-employment with Local 129/Local 22, he was a "Retired Participant" and that therefore, all Plan terms which refer only to loss of status as a "Participant" do not apply to him. He contends that because the Plan makes no distinction between "Retired Participants" and generic "Participants" for purposes of entitlement to disability retirement benefits, his status as a "Retired Participant" never ended – even after he returned to work – and that is was therefore arbitrary and capricious for the Fund to have denied him disability retirement benefits on the grounds that he was no longer a mere "Participant" in the Local 22 Plan.

Assuming *arguendo* that plaintiff is entitled to rely on language in the Local 129 Plan in determining his eligibility to receive benefits under the Local 22 Plan, plaintiff's analysis ignores the plain language of the Local 129 Plan concerning the classification of Retired Participants. It does not provide that an employee is "once a Retired Participant, always a Retired Participant," but

- 4 -

rather provides for Retired Participants to retain that characterization only "[*d*]*uring* a period of re-employment." *Id* (emphasis added). Nothing in the language relied upon by plaintiff supports a finding that the Plan provided for the retention of Retired Participant status after the period of re-employment had ended by some act other than retirement. There is no question that Donovan's application for disability retirement benefits under Local 22 occurred at least three years after his period of re-employment with Local 129 ended, and thus his arguments concerning his status prior to that time, during "the period of re-employment," are irrelevant.

Ultimately, Donovan fails to confront or discredit the primary basis articulated by the defendant for finding that Donovan was not a Plan Participant in the Local 22 Plan at the time of his application for disability retirement benefits: the several-year Break in Service that technically began in approximately July 1998, when Donovan *stopped working for Local 129* and became a permanent member of Local 13, and which officially began – per the terms of the Local 22 Plan – on May 1, 1999, when the locals merged and all former Local 129 Plan Participants automatically became Local 22 Plan "Participants." (Dkt. #12-8 at Art. II, Section 4). With respect to the loss of Participant status, the Local 22 Plan states that:

> An Employee who . . . incurs a Break in Service as defined in Section 2 of Article IV *shall cease to be a Participant* as of . . . the last day of the Plan Year which constituted the break. An Employee who has incurred a Break in Service and ceased to be a Participant, shall again become a Participant in the Plan [on the first day of a Plan Year in which he completes 250 or more Hours of Service].

Dkt. #12-8 at Art. II, Section 3 (emphasis added).

A "Break in Service" is defined as any period of three consecutive "Break Years," or years in which the employee completes less than 250 hours of service. (Dkt. #12-8 at Art. IV, Section 2).

Based on the undisputed facts and the plain language of the Plan, Donovan ceased to be a Local 22 Plan Participant when he incurred the Break in Service following his third consecutive Break Year, in or around May 1, 2002. The Break in Service remained uncured at the time Donovan applied for disability retirement benefits from the Local 22 Plan in 2006. Participation in the Plan

at the time of disability is a prerequisite to an award of disability retirement benefits under the Plan. (Dkt. #12-8 at Art. 1, Section 8; Dkt. #12-9 at 13).

Ultimately, Donovan's status during his period of re-employment six years prior is immaterial: the pertinent questions are first, whether Donovan's status ultimately became that of a Plan Participant in the Local 22 Plan (which it undisputedly did on May 1, 1999, per the terms of the Local 22 Plan), and second, whether he was still a Plan Participant in the Local 22 Plan at the time he applied for disability retirement benefits.  Clearly, due to his uncured Break in Service, he was not.  I therefore conclude that the Fund's decision that Donovan was not a "Participant" for purposes of disability retirement eligibility in 2006 was reasonable, supported by substantial evidence and not erroneous.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, I conclude that Donovan was afforded a reasonable opportunity for a full and fair review of his disability pension claim through Local 22 (formerly Local 129), and that the Plan Administrator's determination was not arbitrary and capricious.  Defendant's motion for summary judgment (Dkt. #12) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 24, 2011.